**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lela K. Neff, | CIV 12-2122-PHX-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Lela K. Neff's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

In August 2008, Plaintiff applied for disability insurance benefits under Section II of the Social Security Act, claiming disability beginning July 28, 2008. (Tr. at 114-23.) After an administrative hearing held on December 28, 2010 (Tr. at 30-49), the ALJ issued a decision dated February 24, 2011, in which he found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 13-29.) Plaintiff then requested review by the Appeals Council (Tr. at 11-12), which denied her request for review in August 2012 (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

\\\

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error.  See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1)  determine whether the applicant is engaged in "substantial gainful activity";

(2)  determine whether the applicant has a medically severe impairment or combination of impairments;

(3)  determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 28, 2008 – her alleged onset date. (Tr. at 18.) At step two, he found that Plaintiff had the following severe impairments: arthritic knees bilaterally; lumbar degenerative disc disease; cervical degenerative disc disease; carpal tunnel syndrome; status post cerebral vascular accident; non-insulin dependent diabetes mellitus; and asthma. (Tr. at 18-19.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 19.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a)."[1] (Tr. at 19-22.) The ALJ determined that Plaintiff "has no past relevant work," but based on her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

1 could perform.[2] (Tr. at 22-23.) Therefore, the ALJ concluded that Plaintiff has not been
2 under a disability from July 28, 2008, through the date of his decision. (Tr. at 23.)

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to make a function-by-function assessment of her residual functional capacity, and limiting her to a full range of sedentary work; (2) failing to consider her other various impairments (carpal tunnel syndrome, obesity, anxiety and depression), contending that these other impairments should have led to additional functional limitations; (3) failing to properly consider her subjective complaints and lay witness evidence; and (4) failing to properly weigh medical source opinion evidence. Plaintiff requests that the Court remand the matter for a computation of benefits.

**A.     Function-by-Function Assessment**

Plaintiff argues that pursuant to Social Security Ruling 96-8p, the ALJ erred by failing to set forth a function-by-function assessment of her residual functional capacity resulting in legal error. Specifically, Plaintiff states that the ALJ assessed a residual functional capacity for "sedentary" work, but failed to make a specific finding as to the length of time she can sit, stand, or walk; or the weight she can lift and carry. Plaintiff states that there is no discussion as to the need or lack of need for a sit/stand option, nor is there a discussion as to handling and fingering limitations. Defendant does not dispute that the ALJ did not set forth a function-by-function assessment, but argues instead that function-by-function assessments are not always necessary.

Social Security Ruling 96-8p states the policies regarding the assessment of a claimant's residual functional capacity. However, "[t]he ALJ is not required, as [Plaintiff]

---

[2] The parties stipulate that the ALJ erred in finding that Plaintiff "has no past relevant work." Since the ALJ found that Plaintiff was not disabled at step five of the sequential evaluation process (Tr. at 22-23), any error or misstatement at step four is harmless. See Tommassetti v. Astrue, 533 F.3d 1035, 1042-43 (9th Cir. 2008) (finding error at step four harmless when ALJ went on to make a finding at step five).

- 4 -

contends, to engage in a function-by-function analysis under SSR 96-8p. SSR 96-8p requires only that the ALJ discuss how evidence supports the residual function capacity assessment and explain how the ALJ resolved material inconsistencies or ambiguities in evidence ... ." Mason v. Comm'r of Soc. Sec., 379 F.App'x 638, 639 (9th Cir. 2010). Accordingly, Plaintiff's argument is unfounded.

In support of the residual functional capacity assessment, the ALJ discussed a wide range of medical evidence and witness testimony. (Tr. at 19-22.) The ALJ appropriately addressed Plaintiff's credibility and also identified which objective medical evidence was compelling and accorded it appropriate weight in formulating the residual functional capacity. He also identified medical evidence that was less compelling, explained why it was less compelling, and accorded it little weight. The ALJ provided ample explanations as to how the medical evidence supported his residual functional capacity assessment and how he resolved inconsistencies in the evidence. (Tr. at 19-22.) The Court concludes that the ALJ's residual functional capacity assessment meets the burden imposed by SSR 96-8p and is supported by substantial evidence.

### B.  Plaintiff's Other Impairments – Carpal Tunnel Syndrome, Obesity, Anxiety and Depression

Plaintiff contends that the ALJ erred by failing to consider her other various impairments (carpal tunnel syndrome, obesity, anxiety and depression), contending that these other impairments should have led to additional functional limitations.

#### 1.  Carpal Tunnel Syndrome

While the ALJ found that Plaintiff's carpal tunnel syndrome was a severe impairment, he did not include limitations related to handling and fingering in the residual functional capacity assessment. The record, however, indicates that although Plaintiff had carpal tunnel syndrome, she rarely sought treatment for it or complained about it to her treating doctors. In light of this minimal record, it was reasonable not to include related limitations in the residual functional capacity assessment.

- 5 -

1  Conditions are severe if they "significantly limit[] a claimant's ability to do basic
2  work activities." 20 C.F.R.§ 404.1520(c).  Residual functional capacity, meanwhile, is "the
3  most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). Accordingly,
4  a "severe impairment need not necessarily 'correspond to limitations on a claimant's ability
5  to perform basic work activities.'" Thomas v. Comm'r of Soc. Sec. Admin., 480 F. App'x
6  462, 464 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228
7  (9th Cir. 2009)).  Thus, the ALJ could legally find that, while Plaintiff's carpal tunnel
8  syndrome met the severity standard at step two, it did not require the inclusion of additional
9  functional limitations in the residual functional capacity assessment.

10  This conclusion is supported by substantial evidence.  Plaintiff was diagnosed with
11  carpal tunnel syndrome in August 2008 when she complained of hand numbness. (Tr. at 271,
12  274-78.)  At that time, Plaintiff only had slightly decreased sensation in her hands (affecting
13  her some of the fingers of her right hand). (Tr. at 276-77.)  Daniel Rylkin, M.D., suggested
14  conservative treatment for her condition – wrist splints. (Tr. at 271.)  Physician's assistant
15  Sandra Murphy specifically stated that Plaintiff's condition was not surgical. (Tr. at 277.)
16  After August 2008, there is no record of Plaintiff complaining of or receiving treatment for
17  carpal tunnel syndrome.  Thus, the medical evidence showed, at most, that Plaintiff's carpal
18  tunnel syndrome caused loss of sensation in some fingers, was not surgical, and could be
19  treated conservatively with wrist splints.  The Court finds no error in the ALJ's decision to
20  not include limitations related to handling and fingering in the residual functional capacity
21  assessment.

22  **2.  Obesity**

23  Plaintiff also contends that the ALJ erred in failing to properly consider the effects of
24  her obesity.  Specifically, Plaintiff states that the ALJ does not list obesity as a severe
25  impairment, does not explain why obesity was not considered to be severe, and does not
26  consider the effect of obesity in combination with the bilateral knee impairment and lumbar
27  degenerative disc disease.

28

In deciding an application for social security disability benefits, the ALJ must consider the impact of claimant's obesity on his impairments and residual functional capacity where claimant presented evidence that reasonably alerted the ALJ to the fact that obesity was exacerbating his other symptoms. See Edwards-Alexander v. Astrue, 336 F. Appx. 634, 637 (9th Cir. 2009). "The fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments." SSR 02–01p.

In his discussion of the medical evidence, the ALJ noted that Plaintiff was obese (Tr. at 20), and also considered the medical records from providers who were aware of Plaintiff's obesity and how it affected her (Tr. at 20-21). However, neither the medical reports nor Plaintiff's contentions suggest that her obesity aggravated her other impairments. Moreover, Plaintiff was represented by counsel at the administrative hearing, and did not point to any evidence that she had functional limitations from obesity. See Burch v. Barnhart, 400 F.3d 676, 682-84 (9th Cir. 2005). In listing the impairments that she felt were disabling for the ALJ, Plaintiff did not mention obesity. (Tr. at 36-37.) And, when Plaintiff's attorney questioned her, he elicited no testimony about her obesity or its effects on her functioning. (Tr. at 40-45.) While Plaintiff's obesity may have affected her back pain, the ALJ accounted for those limitations by limiting her to sedentary work – the least strenuous exertional level recognized by the Commissioner. (Tr. at 19.) Accordingly, the Court finds no error.

### 3. Anxiety and Depression

Finally, Plaintiff complains about the ALJ's treatment of her anxiety and depression claiming that the ALJ erred in determining that said conditions are non-severe. The Court is not persuaded.

The ALJ relied on the opinions from Elliot Salk, Ph.D., who opined that Plaintiff had no problems with understanding and memory, concentration and persistence, or adaptation, and only minor problems with social interaction. (Tr. at 18-19, 494-500.) The ALJ also relied on the opinion from Jaine Foster-Valdez, Ph.D., who concluded that Plaintiff had non-severe mental impairments that mildly limited her activities of daily living and social functioning, but did not limit concentration, persistence, and pace. (Tr. at 18-19, 509-22,

1   571.) Lastly, the ALJ acknowledged that Plaintiff had been hospitalized in July 2009 after
2   an apparent overdose of medication. (Tr. at 19.) When Plaintiff was admitted to the hospital
3   after the overdose, the exacerbating cause was specifically identified as "family problems,"
4   and Plaintiff reported that she had been having difficulties with her son which culminated in
5   conflict earlier that day. (Tr. at 19, 590-91.) After three days of treatment, Plaintiff was
6   released from the hospital, and the doctors observed that her appetite, energy, sleep,
7   behavior, and affect were appropriate; her mood was good; her cognition was intact; and she
8   had no delusions, illusions, homicidal or suicidal ideation.[3]  (Tr. at 19, 714.)

Furthermore, the Court notes that Plaintiff repeatedly presented with appropriate affect, logical thought, and full orientation. (Tr. at 646-48, 668-71, 673-74, 677, 678-80, 682, 684-85.) And, significantly, she repeatedly exhibited a non-depressed mood. (Tr. at 646-48, 669, 671, 677, 679-80, 682, 684-85.)

Accordingly, the Court finds that the ALJ reasonably relied on the opinions from both the consultative examiner and the state agency consultants to find Plaintiff's depression and anxiety non-severe. As a result, the Court finds no error.

## C.   Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could

---

[3] Plaintiff repeatedly refers to this as a "suicide attempt" in her opening brief in support of her contention that the ALJ erred. Plaintiff, however, denied multiple times that she was attempting to harm herself, including during her testimony at the administrative hearing. (Tr. at 42, 590, 690.)

- 8 -

reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d 624, 637-39 (9th Cir. 2007).[4] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

Plaintiff appeared and testified at the December 2010 administrative hearing. (Tr. at 32-45.) She testified that she was five feet three inches tall and weighed 240 pounds. (Tr. at 34.) She testified that her back was her most disabling problem. (Tr. at 36.) She

---

[4] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 9 -

1 identified her other medical problems as: degenerative disc disease in her neck, osteoarthritis
2 in her knees, carpal tunnel syndrome in both hands, "a stroke in May," diabetes, depression,
3 and anxiety. (Tr. at 36-37.) Medication took the edge off her pain, but did not make it go
4 away. (Tr. at 40.) Plaintiff testified that she could climb a flight of stairs, walk on level
5 ground for 10 minutes or one block, stand for 10 to 15 minutes, sit for 30 minutes, and lift and
6 carry five pounds. (Tr. at 38.) Plaintiff also stated that she could reach out with her arms
7 provided it was not continuous and needed assistance with bending and stooping. (Tr. at 38.)
8 She said that she had difficulty gripping or grasping, but admitted she could button her
9 clothes and sign her name. (Tr. at 38.) She stated that she cried frequently, had difficulty
10 dealing with things, had feelings of hopelessness, and experienced panic attacks. (Tr. at 40.)
11 She indicated that she was not trying to kill herself when she overdosed in July 2009. (Tr.
12 at 42-43.)

13 Having reviewed the record along with the ALJ's credibility analysis, the Court finds
14 that the ALJ made extensive credibility findings and identified several clear and convincing
15 reasons supported by the record for discounting Plaintiff's statements regarding her pain and
16 limitations. Although the ALJ recognized that Plaintiff's medically determinable
17 impairments could reasonably be expected to cause the alleged symptoms, he also found that
18 Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
19 symptoms were not fully credible. (Tr. at 19-21.)

20 In his evaluation of Plaintiff's credibility, the ALJ first referenced the objective
21 medical evidence finding that said evidence did not fully support Plaintiff's allegations of
22 disabling symptoms and limitations. (Tr. at 20-21); see Carmickle v. Comm'r, Soc. Sec.
23 Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a
24 sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted); Batson
25 v. Comm'r of Social Security, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical
26 evidence supporting claimant's allegations supported ALJ's finding that claimant was not
27 credible). Specifically, while medical records showed that Plaintiff has cervical and lumbar
28 degenerative disc disease, the records also showed that treatment for these conditions

- 10 -

1  consisted of physical therapy and steroid injections. (Tr. at 20, 523-37.) Further, regarding
2  Plaintiff's knee condition, citing to medical records from Earl L. Feng, M.D., the ALJ found
3  that Plaintiff has good maintenance of her range of motion, comes to almost full extension,
4  further flexes to about 120 degrees bilaterally, and there is no medial/lateral or
5  anterior/posterior instability that can be detected. (Tr. at 20, 634-45.) Additionally, relative
6  to her head trauma, the ALJ noted that a CT scan was normal, mental status was completely
7  normal, her neurological symptoms resolved, and she was able to ambulate by herself
8  without any difficulty. (Tr. at 20, 726-34.) The ALJ also noted that neurological evaluations
9  performed by neurologist G. Arun Kumar in June and July 2010 yielded normal results "with
10 the exception of somatization reaction and syncope (near) (pre) and collapse unknown
11 etiology." (Tr. at 20, 735-39.)

12 　　　Next, the ALJ considered Plaintiff's daily activities in his examination of Plaintiff's
13 credibility. (Tr. at 21.) "[I]f the claimant engages in numerous daily activities involving
14 skills that could be transferred to the workplace, an adjudicator may discredit the claimant's
15 allegations upon making specific findings relating to the claimant's daily activities." Bunnell
16 v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v.
17 Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (claimant's activities suggested a greater
18 functional capacity than alleged). Specifically, the evidence demonstrated that Plaintiff's
19 activities of daily living consisted of living at home with her husband and small children
20 where she performs household chores such as laundry, prepares meals, goes shopping, and
21 handles her own finances. (Tr. at 20, 197-204.) The ALJ found that "[s]uch activities are
22 indicative of a fairly active lifestyle which is consistent with the residual functional capacity
23 as described herein and consequently, weaken the credibility of her allegations." (Tr. at 21.)
24 While not alone conclusive on the issue of disability, an ALJ can reasonably consider a
25 claimant's daily activities in evaluating the credibility of his subjective complaints. See, e.g.,
26 Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility
27 determination based in part of the claimant's abilities to cook, clean, do laundry, and help her
28 husband with the finances); Burch, 400 F.3d at 680-81 (upholding ALJ's credibility

1  determination based in part on the claimant's abilities to cook, clean, shop, and handle
2  finances).

3  Lastly, the ALJ noted that Plaintiff's course of treatment for "her arthritic knees ... and
4  other severe impairments" has been conservative, and found that she has been non-compliant
5  with her prescribed treatment despite her subjective complaints of back pain limiting her
6  ability to work. (Tr. at 21, 634-45, 789-90); see Johnson v. Shalala, 60 F.3d 1428, 1434 (9th
7  Cir. 1995) (evidence of "conservative treatment" is sufficient to discount a claimant's
8  testimony regarding severity of an impairment); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th
9  Cir. 1999) (ALJ may consider Social Security disability claimant's failure to follow treatment
10 advice as a factor in assessing Social Security disability claimant's credibility).

11 In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's
12 allegations not entirely credible. While perhaps the individual factors, viewed in isolation,
13 are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor
14 is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors
15 that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision
16 to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,
17 the Court finds no error.

18 Plaintiff also argues that the ALJ erred in finding the testimony of Plaintiff's mother,
19 Frances Kay Thompson, partially credible and in giving little weight to her testimony. The
20 Court disagrees.

21 According to the record, Ms. Thompson stated that she had to move in with Plaintiff
22 to care for her and that Plaintiff required assistance with personal care; she cannot engage
23 in bending, lifting, or carrying due to pain; has blackouts while driving; and her functional
24 capacity is further affected by pain, depression, anxiety, and medications. (Tr. at 22, 197-
25 204.) The ALJ found that there is no evidence to show that Ms. Thompson has any training
26 or expertise relative to diagnosis, symptoms, prognosis, and treatment of Plaintiff's medically
27 determinable impairments. The ALJ continued stating, "[s]ince Ms. Thompson is not
28 medically trained to make exacting observations as to dates, frequencies, types, and degrees

1  of medical signs and symptoms, or of the frequency or intensity of unusual moods or
2  mannerisms, the accuracy of the testimony is questionable.  Most importantly, significant
3  weight cannot be given to this witness testimony because it, like the claimant's, is simply not
4  consistent with the preponderance of the opinions and observations by medical doctors in this
5  case, including the opinions of Board certified State Agency medical experts." (Tr. at 22.)

6  In determining whether a claimant is disabled, an ALJ must consider lay witness
7  testimony regarding the claimant's inability to work.  See Bruce v. Astrue, 557 F.3d 1113,
8  1115 (9th Cir. 2009) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir.
9  2006)).  An ALJ cannot disregard lay witness testimony without comment, see Bruce, 557
10 F.3d at 1115 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so
11 only upon providing specific reasons that are "germane to each witness."  Id. (quoting
12 Nyugen, 100 F.3d at 1467); Stout, 454 F.3d at 1054.  When an ALJ errs in failing "to
13 properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot
14 consider the error harmless unless it can confidently conclude that no reasonable ALJ, when
15 fully crediting the testimony, could have reached a different disability determination." Stout,
16 454 F.3d at 1056.

17 Although lay witness testimony cannot be rejected because it is provided by non-
18 medical persons with a relationship to the claimant, see Dodrill v. Shalala, 12 F.3d 915, 918-
19 19, the ALJ also found that, "most importantly," Ms. Thompson's testimony regarding
20 Plaintiff's pain and limitations was entirely consistent with Plaintiff's testimony, which was
21 "simply not consistent" with the objective medical evidence as a whole.  Thus, the Court
22 finds that the ALJ provided specific reasons germane to Ms. Thompson and his conclusion
23 is supported by substantial evidence in the record.

24 **D.     Medical Source Opinion Evidence**

25 Plaintiff contends that the ALJ erred by failing to properly weigh medical source
26 opinion evidence.  Plaintiff argues that the ALJ did not provide "specific and legitimate"
27 reasons based on substantial evidence in the record for rejecting Dr. Dominic's opinion.
28

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle, 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester, 81 F.3d at 830. Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. See id. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. See id. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. See id. at 832-33.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. See id. at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." Orn, 495 F.3d at 631.

Plaintiff argues that the ALJ erred in giving "little weight" to Dr. Dominic's opinion. Since Dr. Dominic's opinion was contradicted by examining and state agency reviewing physicians, as well as, the medical evidence of record, the specific and legitimate standard applies.

1 Historically, the courts have recognized the following as specific, legitimate reasons
2 for disregarding a treating or examining physician's opinion: conflicting medical evidence;
3 the absence of regular medical treatment during the alleged period of disability; the lack of
4 medical support for doctors' reports based substantially on a claimant's subjective complaints
5 of pain; and medical opinions that are brief, conclusory, and inadequately supported by
6 medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten
7 v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885
8 F.2d at 604. Here, the Court finds that the ALJ properly gave specific and legitimate reasons,
9 based on substantial evidence in the record, for discounting Dr. Dominic's opinion.

10 According to the record, Plaintiff saw her primary care doctor Anthony Dominic,
11 D.O., approximately once a month (and sometimes more frequently) through at least
12 September 2010 for both medication maintenance and general health concerns. (Tr. at
13 405-31, 526-35, 595-610, 741-55.)

14 In May 2009, Dr. Dominic completed a check-box form in which he opined about
15 Plaintiff's functional abilities. (Tr. at 74-75, 572-73.) He checked "No" when asked if
16 Plaintiff could "perform work 8 hours a day, 5 days a week on a regular and consistent
17 basis." (Tr. at 74.) In addition, Dr. Dominic indicated that Plaintiff could do the following:
18 (1) sit up to two hours, (2) stand/walk up to two hours; (3) lift less than 10 pounds; (4) carry
19 less than 10 pounds; (5) occasionally use her hands and feet; (6) and never bend, crawl,
20 climb, reach, stoop, balance, crouch, or kneel. (Tr. at 74.) He also stated that Plaintiff was
21 "totally restrict[ed]" from every identified environment, and, finally, he opined that the extent
22 of Plaintiff's limitations was severe. (Tr. at 75.)

23 In December 2009, Dr. Dominic completed a new assessment, which was largely
24 identical to his May opinion. (Tr. at 632-33.) He changed his opinion to state that she could
25 not repetitively use her right hand and could occasionally bend and balance. (Tr. at 632-33.)

26 In December 2010, Dr. Dominic completed a third assessment form. (Tr. at 787-88.)
27 This opinion was similar to the prior assessments, but, this time, he opined that Plaintiff
28 could occasionally use her hands and feet and could never bend and balance. (Tr. at 787.)

- 15 -

1        The ALJ gave Dr. Dominic's opinions "little weight" expressing multiple reasons. (Tr. at 21.)  The ALJ stated that he was not giving the opinion controlling weight because opinions on whether a claimant is disabled or unable to work are reserved for the Commissioner and never entitled to controlling weight. (Tr. at 21.)  Although the opinions of treating physicians are generally afforded the greatest weight, opinions regarding whether a claimant meets the statutory definition of disability are reserved to the Commissioner.  See 20 C.F.R. § 404.1527(d)(1); SSR 96-5p, 1996 WL 374183, at *2; Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); Magallanes, 881 F.2d at 751.

        The ALJ further found that Dr. Dominic provided little to no explanation for his opinions. (Tr. at 21.)  Rather, his opinions were made on a check-box style form. (Tr. at 21.)  And, the record indicates that Dr. Dominic's office notes from the various appointments when these opinions were prepared fail to provide any additional explanation for the opinions expressed on the check-box form.  Conclusory opinions "in the form of a check-list" lack "substantive medical findings" and, as a result, do not provide objective medical evidence to support the treating physician's conclusion.  See Batson, 359 F.3d at 1195 (finding the ALJ properly gave minimal weight to treating physician's opinion partly because it was unsupported by objective medical evidence).

        Finally, the ALJ discounted Dr. Dominic's opinions because he noted that the "total restriction" with respect to environmental limitations appears exaggerated and unsupported by his own progress notes, other treatment records and the opinions of the other medical doctors, and Plaintiff's own testimony.  (Tr. at 21.)  The ALJ may disregard a treating physician's opinion when his or her opinion is not supported by the medical record or there is conflicting medical evidence.  See, e.g., Flaten, 44 F.3d at 1463-64; Magallanes, 881 F.2d at 751 ("A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion.").

\\\

\\\

\\\

## V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits in this case.  Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

DATED this 28th day of February, 2014.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge